IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eugene Thomas, #222351, | ) | |
| | ) | C/A No. 1:19-2176-MBS |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Warden of McCormick Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Eugene Thomas is an inmate in custody of the South Carolina Department of

Corrections. He currently is housed at McCormick Correctional Institution in McCormick, South

Carolina. On August 5, 2019, Petitioner, proceeding pro se, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.

## I. FACTS AND PROCEDURAL HISTORY

Michael Gordon was working a side job painting a vacant apartment the afternoon of July

22, 2009. Transcript of Record, ECF No. 9-1, 126. The apartment was without water, so Mr.

Gordon entered a different vacant apartment to wash his hands. Id. at 131. As he was standing at

the sink, Mr. Gordon noticed the door to the apartment swing open. Id. at 137. He turned and saw

a black male, around five feet ten inches tall, wearing a black tank top and black shorts. The man

had long dreadlocks, a mustache, and goatee. Id. at 138. Mr. Gordon asked, "Can I help you?" The

man closed the door and pulled a pistol out of his left front pocket. Id. at 139. The man told Mr.

Gordon to lay face down on the floor, at which point the man straddled Mr. Gordon and took his

wallet and cell phone. Id. at 142. The man began looking through the wallet. Id. at 141. Mr.

Gordon moved his head, at which point the man stuck the gun between Mr. Gordon's shoulder

blades.  Mr. Gordon asked the man not to kill him, that he had a wife and kids.  The man said he was there for the money and did not intend to kill Mr. Gordon.  Id. at 141-42.  Eventually the man laid everything on the counter and told Mr. Gordon he was wiping everything down.  After the man left, Mr. Gordon gathered his things, went to his truck, and called 911.  Id. at 142.  Mr. Gordon found the only thing missing from his wallet was a lottery ticket.  Id. at 145.

Officer J.C. Bradley of the Greenville County Police Department responded to the scene. Id. at 169.   Mr. Gordon was visibly upset, his hands were shaking, and he looked shocked.  Id. at 171. Mr. Gordon's stated that the assailant was a black male, dark skin with dreadlocks, slender build, five feet ten inches in height, late 30s or early 40s, wearing a black tank top, black shorts, and had a black automatic pistol.  Id. at 171-72.  Mr. Gordon recounted that he had some money hidden in a separate compartment of his wallet but the assailant only got a lottery ticket.  Id. at 173.  A forensics officer processed the scene, after which Officer Bradley examined the apartment where the robbery took place.  Id. at 174.  It was well lit, and there were no blinds or curtains.  Id. at 174.

Douglas Smith was the senior forensics investigator for the Greenville County Forensics Division in July 2009.  Id. at 187.  He responded to the call to process the vacant apartment where Mr. Gordon was accosted.  Id. at 188.  Mr. Gordon described to Mr. Smith the events so that Mr. Smith could identify what surfaces could be processed for fingerprints.  Id. at  190.  Mr. Smith located prints on the exterior and interior of the front door.  Id. at 191.  He also obtained a set of elimination prints from Mr. Gordon.  Id. at 196.

Christopher Adam Gary worked for the Greenville County Department of Public Safety in the Forensic Division.  Id. at 199.  Mr. Gary was asked to examine three latent fingerprints on July 23, 2009.  Id. at 208.  Mr. Gary was provided prints of the assailant, as well as Mr. Gordon's

elimination prints. Id. at 209. Mr. Gary was able to identify a latent print gathered from the interior side of the front door above the handle. Id. at 209. The print was identified as from the left little finger of Petitioner. Id.

Detective Flavell received a notification of a fingerprint match from the forensics division before getting started on the investigation. Id. at 240. Detective Flavell spoke with Mr. Gordon by telephone on July 24, 2009, and took his statement. He then scheduled Mr. Gordon to view a photo array on July 28, 2009, in the afternoon. According to Detective Flavell, Mr. Gordon had no hesitation in identifying Petitioner's photograph. Id. at 250. Mr. Gordon told Officer Flavell, "I'm almost positive that that's the guy[.] And just about one hundred percent that this is the guy." Id. at 167. A warrant was issued for Petitioner's arrest.

James Michael Aiken was with the Greenville Police Department in the warrant division during the time of the offense. On September 28, 2009, he located Petitioner in a motel in Greenville. Id. at 261. During the process of arresting Petitioner, Mr. Aiken noticed a small blue zipper bag on the bed in the hotel room. He picked up the bag, which was heavy and felt like a pistol. Mr. Aiken opened the bag and found a pistol, two men's watches, and a dice game, which he took into the custody of the police department. He then notified Detective Flavell in case the items had some connection to Mr. Gordon's case. Id. at 265. The weapon was a mostly black semi-automatic handgun. Id. at 266. No prints were found on the handgun, but a print found on the back of the dice game was identified as from Petitioner's right index finger. Id. at 275.

Petitioner was indicted on May 4, 2010, for armed robbery, in violation of S.C. Code Ann. § 16-11-330; possession of a weapon during the commission of a violent crime, in violation of S.C. Code Ann. § 16-23-490; and burglary in the third degree, in violation of S.C. Code Ann. § 16-11-

0313. ECF No. 9-1 at 495-498. On September 10, 2012, Petitioner appeared before the Honorable R. Markley Dennis for a jury trial. Petitioner was represented by Scott Robinson, Esquire.

Prior to picking a jury, the trial judge engaged in a colloquy with Petitioner verifying that a status conference had taken place in the morning and a plea offer that had been extended to Petitioner by the state had been discussed. According to the trial judge, the state offered to withdraw Petitioner's mandatory sentence of life without parole if Petitioner were to plead guilty. The trial judge further stated that trial counsel was going to discuss Petitioner's taking an Alford plea.[1] ECF 9-1, 10. Petitioner affirmed that he understood the offer and the Alford plea and that he had instructed trial counsel to reject that offer. Petitioner further stated that he understood the trial judge had no option but to charge Petitioner with life without parole if the jury convicted him of the crime of armed robbery. Id. at 11.

At the pretrial conference, trial counsel moved to suppress the photo array. The state first called Detective Flavell to the stand. Detective Flavell testified that he had been with the Greenville City Police Department for over twenty years, and had been in the detective division for approximately fifteen years. Id. at 53. He testified that he had shown more than a hundred photo arrays. Id. He stated that he met with Mr. Gordon in his office at the Law Enforcement Center. Detective Flavell told Mr. Gordon that the perpetrator's photo might not be in the line-up, and to not feel like he had to pick someone out of the line-up just because Detective Flavell was showing the pictures to him. Detective Flavell testified that a photo array is computer-generated based on perimeters such as weight and height. Detective Flavell testified that, in this case, the physical

---

[1] North Carolina v. Alford, 400 U.S. 25 (1970) (affirming the viability of a guilty plea when the defendant refuses to admit to the commission of the criminal act, but intelligently concludes that his interests require entry of a guilty plea).

characteristics used were black male, dark skin, dreadlocks, neatly trimmed, goatee, mustache, some facial hair. He tried to make the other five photos as similar as possible to Petitioner's photo. Id. Detective Flavell identified the actual photo array he had shown to Mr. Gordon, as well as Mr. Gordon's initials over the photo he selected as the person who had robbed him. Id. at 58. Detective Flavell stated that Mr. Gordon was very confident in his selection. Id. at 60. Detective Flavell denied suggesting to Mr. Gordon in any way which photo to select. Id. at 63. On cross-examination, Detective Flavell admitted Mr. Gordon did not state that he was "one hundred percent" sure the person in the photo array was the man who had robbed him. Id. at 64.

Mr. Gordon also testified regarding his identification of Petitioner. He described the layout of the apartment complex and the fact that he had the combinations to two lock boxes for the two empty apartments. Id. at 69. He stated that the apartment where he was robbed had no blinds, a sliding glass door, and a window in front of the sink, so the apartment was well lit. Id. at 70. The sink was about twelve feet from the front door. Id. He had no trouble seeing the man who walked in the door. Id. at 71. Mr. Gordon described the man's appearance, what he was wearing, his facial hair, and his dreadlocks. Id. at 72. Mr. Gordon recounted how the man pulled a gun from his left front pocket and told Mr. Gordon to lie down on the floor. Id. Mr. Gordon knew the gun was an automatic because the gun did not have a cylinder like a revolver. Id. at 73. Mr. Gordon recounted how the man had straddled his back and went through his wallet, looking for money, and that the man had stuck the gun between Mr. Gordon's shoulders and said, "I'm not here to kill you, I just want some money." Id. at 74. The entire episode took place in the kitchen. According to Mr. Gordon, the man put everything on the counter and said he was wiping everything down, not to look up for a few minutes. After the man left, Mr. Gordon grabbed everything, went out the door, locked

5

the door behind him, went to his truck, and called 911.  Id. at 75.

Mr. Gordon described speaking with Officer Bradley and Detective Flavell.  Mr. Gordon identified the photo array and described his meeting with Detective Flavell to view the photos. He did not feel pressured or influenced by Detective Flavell.  Mr. Gordon then identified Petitioner in the courtroom as the person he had picked from the photo array.  Id. at 77-80.

On cross-examination, Mr. Gordon stated that he was face to face with Petitioner from about eight to ten feet away.  Mr. Gordon stated that he did not wear prescription glasses or contacts.  Id. at 83.  Mr. Gordon agreed that he did not say he was one hundred percent sure that the person in the photograph was the intruder.  Id. at 86.

Officer Bradley also testified to the events the afternoon of July 22, 2009.  Id. at 93.  Officer Bradley stated that Mr. Gordon was visibly nervous and his hands were shaking.  Mr. Gordon said it was a pretty scary incident, and clearly described the events.  Id. at 94.  Mr. Gordon provided Officer Bradley a physical description of the man.  Id. at 95-96.

The trial judge ruled that the photo identification was not unduly suggestive or unusual.  He noted that the question of whether the identification is sufficient was for the jury.  The trial judge noted that Mr. Gordon had testified about the length of time he had to view the intruder, and that Mr. Gordon probably had a heightened awareness of what was going on.  The trial judge found there was nothing unreliable about the photo array, and therefore denied Petitioner's suppression motion.  Id. at 102.

During trial, the state called Mr. Gordon, Officer Bradley, Mr. Smith, Mr. Gary, Detective Flavell, and Officer Aiken to the stand, as well as Jennifer Hallex, the property manager of the apartments where Mr. Gordon was working; and Greg Byram, who had painted the vacant apartment

6

where the robbery took place.  Id. at 213-235.  During Mr. Gordon's testimony, the state showed Mr. Gordon the gun found in Petitioner's hotel room and asked if it appeared similar to the gun that was held during the robbery.  Id. at 156.  Mr. Gordon replied, "Yes.  I'm not saying that is [the] gun but it's similar to it."  Id.  When Officer Aiken took the stand, the state asked him to describe the weapon he found in Petitioner's hotel room.  Officer Aiken described it as "mostly black with some silver color on it, semi-automatic handgun."  Id. at 266.  Officer Aiken identified the gun that he had taken into police custody from the hotel room, at which time the gun was admitted into evidence.  Trial counsel objected on the grounds of relevance.  Id. at 266-68.

Petitioner determined not to testify and not to call witnesses. ECF No. 282-86.  Trial counsel moved for a directed verdict of acquittal as to the charges of armed robbery, burglary in the third degree, and possession of a weapon during the commission of a violent crime.  Id. at 295.  Trial counsel argued that the state did not meet its burden of proof.  Trial counsel also argued that the stolen lottery ticket was not property, had no value, and therefore the elements of the armed robbery statute were not met.  Id. at 296.  The trial judge denied the motion.  Id. at 296-97.  The trial judge also denied Petitioner's motion to charge strong armed robbery because the evidence did not support such a charge.[2]  Id. at 298.

The trial judge charged the jury on the elements of armed robbery, attempted armed robbery, possession of a weapon during a violent crime, and burglary third degree.  Id. at 333-36. After deliberations, a jury found Petitioner guilty of burglary third degree (Count One), possession of a

---

[2]"Strong armed robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." State v. Rosemond, 589 S.E.2d 757, 758 (S.C. 2003) (citing State v. Gourdine, 472 S.E.2d 241 (S.C. 1996)).

weapon during the commission of a violent crime (Count Two), and a lesser offense of attempted armed robbery (Count Three).  Id. at 342.  Because Petitioner previously had been convicted in Florida of murder in the second degree, he was subject to a mandatory two-strikes sentence of life without parole as to Count One.  Id. at 345, 352; S.C. Code Ann. § 17-25-45.[3]  Accordingly, Petitioner was sentenced to imprisonment for life without parole as to Count One, five years imprisonment as to Count Two, to be served concurrently; and five years imprisonment as to Count Three, to be served concurrently.  Id. at 352.

Petitioner, through appellate counsel Timothy Lee Gehret, Esquire, and Chief Appellate Defender Robert Michael Dudek, filed a notice of appeal.  In his brief, Petitioner raised the following issues:

1.    DID THE CIRCUIT COURT ERR IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE THE STATE'S CIRCUMSTANTIAL EVIDENCE WAS NOT SUBSTANTIAL ENOUGH TO CREATE ANY MORE THAN A MERE SUSPICION OF GUILT?

2.    DID THE CIRCUIT COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS THE PRE-TRIAL PHOTO LINEUP IDENTIFICATION BECAUSE IT WAS UNDULY SUGGESTIVE AND UNRELIABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES?

3.    DID THE CIRCUIT COURT ERR IN REFUSING TO CHARGE THE LESSER INCLUDED OFFENSE OF STRONG ARMED ROBBERY BECAUSE NO PROOF OF A WEAPON OR THREAT OF A WEAPON WAS EVER PRESENTED?

ECF No. 9-2, 5.

The South Carolina Court of Appeals issued an unpublished, summary opinion on October

---

[3]Trial counsel argued that the Florida conviction did not qualify as a strike because of its age and the description of the offence.  ECF No. 9-1, 351.  The trial judge found that the prior offense of murder in the second degree constituted a strike under South Carolina law.  Id. at 352.

8

15, 2014.  The Court of Appeals noted, among other things, that the trial judge was obligated to submit a case to a jury if there is any direct evidence or substantial circumstantial evidence that reasonably tends to prove the guilt of the accused; the trial judge did not abuse his discretion in allowing the photo array into evidence; and the trial judge did not err in refusing to charge the lesser offense of strong armed robbery because there was no evidence tending to show Petitioner was guilty of the lesser offense.  Accordingly, the Court of Appeals affirmed.  ECF No. 9-4.  The remittitur was issued on November 3, 2014.  ECF No. 9-5.

On May 7, 2015, Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") in the Court of Common Pleas for Greenville County, South Carolina.  Petitioner asserted the following grounds for relief:

> Ground One - Applicant was denied the right to effective assistance of counsel – guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I §§ 3 and 14 of South Carolina Constitution – during the guilt or innocense phase of his trial.
>
> (1)    Counsel failed to communicate the full extent and consequences of plea offer.
>
> (2)    Counsel's failure to object to a constructive amendment of applicant indictment, and failure to move for a verdict in arrest of judgment and entry of judgment of acquittal based on the trial court's lack of jurisdiction to convict and sentence Applicant for "unindicted" attempted armed robbery offense.
>
> (3)    Ineffective assistance of counsel's failure to move for suppression of "gun" and "dice game" that was obtained in violation of a search incident to arrest. Applicant was listed as a guest.  (Police testified that "gun and dice game" was not within Applicant's reach at any time of his arrest.)
>
> (4)    Trial counsel was ineffective due to his failure to present Applicant's alibi defense as a reasonable strategy instead of opting for the last argument.
>
> (5)    Trial counsel ineffective due to counsel's failure to investigate or research.

9

(6)    Trial counsel ineffective due to counsel's failure to object to the prosecutor's closing argument of insinuating prior bad acts of robbery being committed by Applicant.

(7)    Trial counsel's failure to object to erroneous jury charge.

(8)    Prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963) by failing to disclose that the state's fingerprint analyst Christopher Adam Gary was not certified by SLED in accordance with S.C. Code Ann. § 23-3-15.

Ground Two - Applicant was denied the right to effective assistance of counsel – guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I §§ 3 and 14 of South Carolina Constitution – during the sentencing phase of his trial.

(1)    Trial counsel was ineffective by giving client erroneous advice of statutory law.

Ground Three - Applicant was denied the right to effective assistance of counsel – guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I §§ 3 and 4 of South Carolina Constitution – during the direct appeal stage of his conviction.

(1)    Appellate counsel was ineffective for failing to raise reversible error which was meritorious on direct appeal. The due process clause of the Fourteenth Amendment guarantees the right to [effective] assistance of counsel on a first appeal as a right in state court. Applicant submits that had his issue been raised there was a reasonable probability that his appeal would have been successful.

See generally ECF No. 9-1, 362-65 (not quoted verbatim).

A PCR hearing was held on October 24 and 27, 2016, before the Honorable John C. Hayes. Petitioner was represented by Brian P. Johnson, Esquire. Petitioner testified that trial counsel had given him erroneous advice on statutory law. According to Petitioner, trial counsel informed him that he could not receive life without parole because of the age of Petitioner's Florida conviction for second degree murder in 1981. Id. at 388. Petitioner contended that if he knew the attempted armed robbery would have subjected him to a strike as did armed robbery, he would not have tried to

challenge both charges.  Id. at 392-93.  Petitioner testified that the state had offered him a plea bargain of twelve to fourteen years incarceration, which was a lot less than what trial counsel erroneously advised him his sentencing range would be if they went to trial.  Id. at 393.  According to Petitioner, trial counsel told him the state would not be able to prove that anything was taken during the robbery.

Petitioner also had prepared a list of six potential alibi witnesses.  Id. at 394-97.[4]  When Petitioner went to trial, two of his alibi witnesses appeared but trial counsel did not want to use the witnesses because he thought he could convince the jury that a robbery never took place.  Id. at 398.  Petitioner admitted that his alibi witnesses had prior criminal offenses, but he felt that they needed to be called to the stand in his defense.  Id. at 398-99.  Petitioner stated that his alibi witnesses would have testified he was at a cookout playing poker at the time of the robbery.  Id. at 400.

Petitioner further contended that his fingerprint was on the door of the apartment where the robbery took place because he and another alibi witness, Darlene Gordon, had gone to the apartment looking to rent it.  Id. at 400.  Petitioner believed that calling his witnesses would have been useful because Mr. Gordon's choosing Petitioner in the photo array "was not the strongest identification." Id. at 402.

On cross-examination, Petitioner admitted that he had received notice of the state's intent to seek life without parole.  Id. at 403.  Petitioner admitted that the trial judge had informed him that he was subject to life without parole, and ensured that Petitioner had instructed his attorney to reject the plea offer.  Id. at 405.  Petitioner admitted that the trial transcript showed that he agreed with his

---

[4]It appears that an earlier trial was continued because trial counsel had neglected to call alibi witnesses identified by Petitioner.  ECF No. 9-1, 396-97.

attorney's decision not to call the alibi witnesses, but that was before Petitioner knew he had a right to a defense.  Id. at 405-06.  According to Petitioner, trial counsel told him the witnesses were not necessary because he could beat the case if he got the last argument, but that if he called witnesses he would not be able to get the last argument.  Id. at 406-07.  Petitioner felt like he had to agree with the trial judge's queries regarding the witnesses because the trial judge had admonished him earlier in the proceedings to listen to trial counsel.  Id. at 408-09.  Petitioner had information he wanted to present to the trial judge regarding Lucy Early, a witness who had seen someone else at the scene, but the trial judge would not allow it.  Id. at 410-14.  The PCR judge agreed to admit the supplemental information into evidence.  Id. at 414.

Petitioner testified that, because of trial counsel's deficient performance, Petitioner thought he was going into the courtroom on the armed robbery charge or the state would drop the armed robbery charge and try to charge him with attempted armed robbery.  Petitioner did not understand that he could be found guilty of the lesser included offense of attempted armed robbery.  Id. at 416-17.

The state called trial counsel to the stand.  Id. at 419.  Trial counsel stated he was appointed to represent Petitioner on October 5, 2010.  ECF No. 420.  Trial counsel stated that he met with Petitioner eighteen times prior to trial and reviewed all of the discovery with Petitioner.  Trial counsel agreed that Petitioner had given him a list of witnesses that his investigator, Leah Connolly, would have spoken with.  Id. at 421-23.  Trial counsel stated that he subpoenaed six witnesses: Vicky McBee, Darlene Gordon, Frank Mansell, Karen Cruell, Demeco Thomas, and Melvin Coleman.  Trial counsel stated that he had been provided the name of Lucy Early, the woman who said she had seen someone else in the area beside Petitioner, but the woman was not called because her testimony

12

would be too conjectural.  Id. at 423.

Trial counsel stated that the trial judge was going to allow Petitioner to enter an Alford plea, but that Petitioner refused every offer.  Trial counsel stated that he spoke to Petitioner at length about his potential witnesses and the fact that putting them on the stand could backfire, especially in Petitioner's case because it was a purely circumstantial case.  Id. at 424.  Trial counsel testified that "at the end [of] the day this was [Petitioner's] case and it was his decision to go forward, it was his decision to . . . not call witnesses based on my strategy . . . ."  Id. at 427.  Trial counsel was of the opinion that the Florida attempted murder conviction was too remote to count as a strike, and he argued that, but the trial judge did not agree.  Id.  Trial counsel testified his theory of the case was that there was not enough evidence to convict Mr. Thomas, that the evidence was purely circumstantial, and that Mr. Gordon could not identify Petitioner "a hundred percent."  Id. at 428.  Trial counsel denied ever telling Petitioner that if he was convicted he would not get life without parole.  Id.

Trial counsel testified that his theory was that the state did not have enough evidence to convict Petitioner.  Trial counsel noted that the evidence was all circumstantial and that Mr. Gordon could not state with one hundred percent accuracy that Petitioner was the perpetrator.  Id.  Trial counsel testified that Petitioner provided him a list of six persons, who were subpoenaed.  Id.  Trial counsel stated that he told Petitioner he would argue that the Florida attempted murder conviction was too remote, but that it was up to the trial judge to make the ultimate decision.  Trial counsel believed that he and Petitioner understood each other and that they had a good relationship.  Id. at 430.  Trial counsel testified that he believed Petitioner had tried to have the trial judge admit evidence regarding the third-party guilt witness Lucy Early, but the problem with her was that she

13

could not say who the other person was that she saw in the area at the time of the robbery.  Id. at 334-35.  Trial counsel admitted that he did not specifically check the Florida attempted murder statute to see whether the South Carolina two-strikes statute would apply.  Id. at 441.  Trial counsel stated that he had a strategic reason for not calling each potential witness, and that it was with Petitioner's consent and reviewing it with him at trial.  Id. at 442.

The PCR judge recessed for lunch, after which Petitioner again took the stand to address the remaining issues raised in his PCR application.  Petitioner argued that, had trial counsel researched the Florida second degree murder statute, he would have known the Florida conviction would count as a strike.  Id. at 449-50.  Petitioner further asserted that the gun found in his hotel room should have been suppressed because two of the officers searching the room went under the bed and pulled out a tote bag and inside the tote bag was a duffel bag, and inside the duffel bag was the pouch containing the gun.  Id. at 453.  Petitioner contended that a search warrant should have been obtained, because there was no urgency or danger in the situation.  Id. at 454-55.  Petitioner testified that trial counsel's failure to suppress the gun prejudiced him at trial because the jury was told the gun resembled the gun used during the robbery.  Id. at 456-67.  Petitioner also asserted that the state's opening and closing arguments poisoned the jurors' minds because the solicitor talked about items that were not admitted into court, like Mr. Gordon's wallet, his debit card, his credit card, his Lowe's card, and his cell phone, rather than solely the lottery ticket.  Id. at 458.

The PCR judge reconvened the hearing to allow Petitioner time to place his alibi witnesses on the stand.  Id. at 465.  Demeco Romero Thomason testified that he was playing cards with Petitioner from about 5:00 p.m. or 6:00 p.m. until around 3:00 a.m. or 4:00 a.m. Id. at 467.  The next night the card game resumed and Petitioner told him, "Man, somebody said I robbed 'em at such last

14

night, I said, How can you rob somebody last night, you was up here playin' cards with us." Id. at 469.

Yvonne Dee McBee testified that she had known Petitioner for thirty or forty years. Id. at 471. She testified that Petitioner came to her house around 8:30 am or 9:00 am the morning of the robbery and was in her yard all day, cooking out, and then playing cards until about 5:00 a.m. Id. at 473. According to Ms. McBee, Petitioner never left her home. Id.

The PCR judge allowed Petitioner to submit to the court a letter dated August 17, 2011, from Absolute Property Services; a letter dated August 23, 2010, from Randy Chambers, Petitioner's previous trial counsel, to Jennifer Tessitore; and a letter dated June 14, 2012 from Jennifer Tessitore to Dan Shearhouse, Clerk of the South Carolina Supreme Court. The first two letters referenced Ms. Early and her statement she had seen someone with dreadlocks in the area, and that she did not recognize Petitioner from a photograph. The exhibits were marked as Court's Exhibits 1, 2, and 3, respectively. The PCR judge determined the letters constituted inadmissible hearsay. Id. at 480-81; see ECF No. 9-1, 484-88.

The PCR judge entered an order dismissing the PCR application on or about November 4, 2016. ECF No. 9-1 at 489. The PCR judge determined that Petitioner's nine grounds for relief were compressed at his hearing to four. The PCR judge stated that, first, Petitioner alleged trial counsel was ineffective for failing to present Petitioner's defense of alibi. The PCR judge found that trial counsel, with Petitioner's approval, utilized acceptable trial strategy to not present a defense to preserve his right to make the final closing argument. The PCR judge noted that trial counsel testified he advised Petitioner as to the pros and cons of preserving final argument and Petitioner agreed with trial counsel's strategy to not call witnesses. The PCR judge observed that the trial

transcript reflected Petitioner's satisfaction with this strategy.  Id. at 490.  The PCR judge determined that trial counsel had articulated a valid reason for employing his strategy, and that his actions did not constitute ineffective assistance of counsel.  Id. at 491.

The PCR judge stated that, second, Petitioner alleged trial counsel did not properly advise him that he was subject to a mandatory sentence of life without parole, whether he was convicted of armed robbery or attempted armed robbery.  The PCR judge found that Petitioner was well aware of his potential life without parole sentence, as he had received two notices from the state advising him that the state would seek a life without parole sentence.  The PCR judge also noted that Petitioner acknowledged to the trial judge that he knew he would received a sentence of life without parole if convicted.  Id. at 491.

The PCR judge recounted that Petitioner testified trial counsel was ineffective for not investigating and researching whether Petitioner's Florida second degree murder charge was a qualifying conviction under South Carolina's two-strike law.  The PCR judge noted that murder is a qualifier for life without parole regardless of the state of conviction, and that the two-strikes law has no time parameters outside of which a qualifying conviction is too remote.  Id. (citing S.C. Code Ann. § 17-25-45).  The PCR judge noted that, despite the two-strikes law, trial counsel made a vigorous effort to get the trial judge to make a finding that the Florida conviction was too remote to be used as a qualifier.  Id.

The PCR judge determined that Petitioner's argument that trial counsel was ineffective for failing to conduct proper research was not logical, because Petitioner repeatedly was advised that he was facing life without parole if convicted of armed robbery.  The PCR judge stated Petitioner seemed to claim that if he was absolutely sure he was facing life without parole he would not have

16

gone to trial.  The PCR judge found that the record was clear Petitioner knew he was facing life without parole if he was convicted of armed robbery or attempted armed robbery.  Id. at 492.

The PCR judge stated that, third, Petitioner alleged trial counsel should have moved to suppress the gun that ultimately was entered into evidence.  According to Petitioner, law enforcement should have obtained a search warrant.  The PCR judge noted that one of the officers on the scene testified that the bag containing the items was within arm's length of Petitioner.  The PCR judge observed that a search incident to arrest and confined to the immediate vicinity of the arrest does not offend the Fourth Amendment.  The PCR judge noted that trial counsel objected to admission of the gun on grounds of relevance, but was overruled.  Id.

Finally, the PCR judge stated that Petitioner's final argument was that the state in its opening and closing talked about facts and items not put into evidence.  The PCR judge found the claim without merit because Petitioner did set forth the specifics of this argument.  The PCR judge also noted that the jury was instructed that counsel's arguments did not constitute evidence.  Id. at 492-93.  The PCR judge found that Petitioner did not prove by a preponderance of the evidence that trial counsel was ineffective on any of the grounds presented.  The PCR judge therefore denied Petitioner's PCR application and dismissed it with prejudice.  Id. at 494.

On or about June 28, 2017, Petitioner, through counsel, filed a petition for writ of certiorari to the South Carolina Supreme Court.  ECF No. 9-6.  The petition raised the following issue:

Whether defense counsel was ineffective in failing to call alibi witness at petitioner's trial?

Id. at 3.

On May 24, 2018, the South Carolina Supreme Court issued a writ of certiorari to review the

PCR judge's denial of Petitioner's PCR application.  ECF No. 9-8.  However, on June 19, 2019, the Supreme Court dismissed the petition as improvidently granted.  ECF No. 9-11.  Remittitur was issued on July 8, 2019.  ECF No. 9-12.

On February 26, 2019, prior to dismissal of the petition for writ of certiorari, Petitioner filed a successive PCR application.  ECF No. 9-13; see Thomas v. State, 2019-CP-23-01381.  Petitioner asserted that the trial judge did not have subject matter jurisdiction to sentence Petitioner to life without parole because 1993 Act No. 184, which amended S.C. Code Ann. § 16-1-60 (defining violent crimes) and 1995 Act No. 7, which amended S.C. Code 16-11-330 (setting forth mandatory minimum terms) appear in the South Carolina Archives Department without signatures or the Great Seal, as is required by the South Carolina Constitution, art. 3, § 18.[5]  It appears a conditional order of dismissal was filed on August 24, 2020.  See  https://www2.greenvillecounty.org/SCJD/Public Index/CaseDetails.aspx?County=23&CourtAgency=23002&Casenum=2019CP2301381&CaseT ype=V&HKey=9952731226511912170741187643122777956981111138581437781738074101 10865110382877911652811028886105399 (accessed September 18, 2020).

## II.  DISCUSSION

Title Twenty-Eight, United States Code, Section 2254 provides:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[5] Section 18 provides:  "No Bill or Joint Resolution shall have the force of law until it shall have been read three times and on three several days in each house, has had the Great Seal of the State affixed to it, and has been signed by the President of the Senate and the Speaker of the House of Representatives:  Provided, That either branch of the General Assembly may provide by rule for a first and third reading of any Bill or Joint Resolution by its title only."

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)(i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

    (A) the claim relies on--

    (i) a new rule of constitutional law, made retroactive to cases on collateral

review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

(g) A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding.

(h) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(i) The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

The limited scope of federal review of a state petitioner's habeas claims is grounded in fundamental notions of state sovereignty.  Richardson v. Branker, 558 F.3d 128, 138 (4th Cir. 2012) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)).  When a federal court adjudicates a habeas corpus petition brought by a state prisoner, that adjudication constitutes an intrusion on state

sovereignty.  Id. (citing Harrington, 562 U.S. at 103).  A federal court's power to issue a writ is limited to exceptional circumstances, thereby helping to ensure that "'state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.'"  Id. (citing Harrington, 562 U.S. at 103).  The restrictive standard of review "'further[s] the principles of comity, finality, and federalism.'"  Id. (citing Williams v. Taylor, 529 U.S. 362, 364 (2000)).  "'The pivotal question is whether the state court's application of the [applicable federal legal] standard was unreasonable.'"  Id. (quoting Harrington, 562 U.S. at 103).  So long as fairminded jurists could disagree on the correctness of a state court's decision, a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court.  Id. (citing Harrington, 562 U.S. at 102).

Petitioner asserts the following grounds for relief:

1.    Trial counsel was ineffective for failure to call alibi witnesses at Petitioner's trial.

2.    Trial counsel was ineffective for not "investigating" and "researching" whether or not [Petitioner's] 1981 conviction for murder in Florida was a qualifying conviction for LWOP.

3.    Trial counsel was ineffective for failing to suppress[] gun that was ultimately entered into evidence.

4.    Trial counsel was ineffective for failure to object to the prosecutor's "opening" and "closing" arguments to the jury by referring to; or relying upon evidence not admitted into evidence by Trial Court.  Thus violating the Rules Governing the admission of evidence, which violated Petitioner's 6th and 14th Amendments of the U.S. Constitution.

5.    Inadequate assistance of counsel at a critical stage at initial-review collateral proceeding.

6.    Failed to communicate full extent and consequences of plea offer.

7.    Failed to object to erroneous jury charge.

21

8.      Failed to object to prosecutor's closing argument that insinuated bad acts.

9.      Failed to object to a constructive amendment of the indictment.

10.     <u>Brady Violation</u> Prosecutor failed to disclose[] the State's fingerprint analyst was not certified by S.L.E.D.

11.     Appellate counsel was ineffective for failing to raise reversible error which was meritorious on direct appeal.

ECF No. 1-2, 1-2.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. Respondent filed a motion for summary judgment on September 26, 2019.  The Magistrate Judge filed a Report and Recommendation on January 13, 2020.  The Magistrate Judge determined that Grounds Two, Three, Four, Six, Seven, Eight, Nine, Ten, and Eleven have been procedurally defaulted, and that Grounds One and Five are without merit.  Petitioner filed objections to the Report and Recommendation on February 24, 2020, to which Respondent filed a reply on March 9, 2020.[6]

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility for making a final determination remains with this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976).  This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.  28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.  <u>Id.</u>

---

[6] On February 24, 2020, Petitioner also filed a motion to stay to allow him to attempt to exhaust his state remedies.  Successive PCR applications are disfavored under South Carolina law; nevertheless, Petitioner's motion to stay was granted on April 2, 2020.  It appears that Petitioner filed a motion to amend his successive PCR application on April 27, 2020.  A conditional order of dismissal was filed on August 24, 2020.  The court hereby lifts the stay and addresses Petitioner's objections.

Law/Analysis

A.     Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner ordinarily must satisfy both parts of the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  The petitioner first must show that counsel's representation fell below an objective standard of reasonableness.  Id. at 687–88.  In making this determination, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  However, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  Id. at 691-92 (citing United States v. Morrison, 449 U.S. 361, 364–65 (1981)).  "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."  Id. at 692.

1.     Ground One.  The Magistrate Judge observed that the PCR judge found credible trial counsel's testimony that he did not call the alibi witnesses in order to preserve his right to make the last closing argument.  The Magistrate Judge determined that it was not unreasonable for the PCR judge to conclude trial counsel employed a valid strategy.  The Magistrate Judge noted that trial counsel was prepared to call alibi witnesses at the time of Petitioner's trial, but decided against it for strategic reasons.  Accordingly, the Magistrate Judge recommended that Respondent's motion for

summary judgment be granted as to this ground.

Petitioner objected to the Report and Recommendation as to Ground One because the Magistrate Judge did not address Petitioner's contention that trial counsel was ineffective for failing to call the allegedly exculpatory witness, Lucy Early.  Petitioner raised Ms. Early in his response in opposition to Respondent's motion for summary judgment.  See ECF No. 25-1, 1.

Despite the liberal pleading rules outlined by the Supreme Court, plaintiffs may not raise new claims without amending their complaints after discovery has begun.  Barclay White Skanska, Inc. v. Battelle Memorial Institute, 262 F. App'x 556, 563 (4th Cir. 2008).  Nevertheless, Plaintiff's claims regarding Ms. Early suffer the same infirmity as his other procedurally barred grounds for relief.  Although the facts regarding Ms. Early were discussed at the PCR hearing, the issue was not ruled on by the PCR judge and not raised in Petitioner's petition for writ of certiorari.  Petitioner's objection is without merit.

2.     Ground Five.  The Magistrate Judge observed that Petitioner's claim of ineffective assistance of PCR counsel is not cognizable for purposes of federal habeas review.  See 29 U.S.C. § 2254(i); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988).  Thus, the Magistrate Judge recommended that Respondent's motion for summary judgment be granted as to this ground.

Petitioner objects to the Magistrate Judge's findings and conclusions as to Ground Five and states that a free-standing ground could serve as cause to excuse the procedural default and the court's failure to consider this ground for relief will result in a fundamental miscarriage of justice. The court disagrees.

 "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such

proceedings." Coleman v. Thompson, 501 U.S. 772, 752 (1991)(citations omitted).

Petitioner appears to rely on Martinez v. Ryan, 566 U.S. 1 (2012), in which the Supreme Court recognized an exception to the prohibition on ineffective assistance of PCR counsel claims:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Martinez, 566 U.S. at 14.

In this case, Petitioner complains that PCR counsel's performance was deficient because he did not help Petitioner at the PCR hearing explain Petitioner's contention that the state referred to and relied on facts not in evidence during opening and closing arguments. Because Petitioner's ground for relief does not involve an ineffective assistance of trial counsel claim, Martinez has no application. Petitioner's objection is without merit.

B.    Procedural Default

All state prisoners must exhaust the remedies available in the courts of the state before seeking federal habeas review. Valentino v. Clarke, No. 18-7295, 2020 WL 5034418 (4ᵗʰ Cir. Aug. 26, 2020). This exhaustion requirement gives state courts "'a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Id. (quoting Vasquez v. Hillery, 474 U.S. 254, 257 (1986)). A procedurally defaulted claim is one that either has been, or would be, rejected by the state courts, not on the merits, but on the basis of an adequate and

independent state procedural rule.  See Woodfolk v. Maynard, 857 F.3d 531, 543 (4ᵗʰ Cir. 2017)

(citing Jones v. Sussex I State Prison, 591 F.3d 707, 715 (4th Cir. 2010)).  In Coleman, 501 U.S. at

779, the Supreme Court held that federal courts will not review a question of federal law decided by

a state court if the decision of that court rests on a state law ground that is independent of the federal

question and adequate to support the judgment.  Id. at 729.  In the context of federal habeas review,

the Court explained:

> Just as in those cases in which a state prisoner fails to exhaust state remedies, a
> habeas petitioner who has failed to meet the State's procedural requirements for
> presenting his federal claims has deprived the state courts of an opportunity to
> address those claims in the first instance. A habeas petitioner who has defaulted his
> federal claims in state court meets the technical requirements for exhaustion; there
> are no state remedies any longer "available" to him. In the absence of the independent
> and adequate state ground doctrine in federal habeas, habeas petitioners would be
> able to avoid the exhaustion requirement by defaulting their federal claims in state
> court. The independent and adequate state ground doctrine ensures that the States'
> interest in correcting their own mistakes is respected in all federal habeas cases.

Coleman, 501 U.S. at 731-32 (internal citations omitted).

Thus, if a § 2254 petitioner has failed to raise a claim in state court, and is precluded by state

rules from returning to state court to raise the issue, a federal court is barred from considering the

filed claim, absent a showing of cause and actual prejudice.  See Matthews v. Evatt, 105 F.3d 907

(4th Cir. 1997).  The existence of cause ordinarily must turn on whether the prisoner can show some

objective factor external to the defense impeded counsel's or his efforts to comply with the state rule.

Id. Actual prejudice is shown by demonstrating that the error worked to the petitioner's "actual and

substantial disadvantage," rather than creating a possibility of prejudice. Id. at 498 (citing United

States v. Frady, 456 U.S. 152, 170 (1982)).

1.    Grounds Two, Three, and Four.  The Magistrate Judge determined these claims were

procedurally defaulted because they were not raised in Petitioner's petition for writ of certiorari filed with the South Carolina Court of Appeals. The Magistrate Judge stated that Petitioner had a trial, direct appeal, PCR hearing, and appeal from the PCR judge's ruling in which to raise these issues. The Magistrate Judge determined that Petitioner had abandoned the opportunity to preserve these grounds. As to Grounds Two, Three, and Four, the Magistrate Judge noted that Petitioner raised these issues in his PCR hearing and they were ruled on by the PCR judge. However, because the PCR judge's decisions regarding Grounds Two, Three, and Four were not included in the petition for writ of certiorari, they are defaulted for purposes of habeas review.

The Magistrate Judge further found that Petitioner did not show cause and prejudice under Martinez, because Martinez does not apply to claims of ineffective assistance of PCR appellate counsel. See Martinez, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.") (internal citations omitted).

Petitioner objects to the Magistrate Judge's findings regarding Grounds Two, Three, and Four. Petitioner contends he showed cause and actual prejudice; that the Magistrate Judge rephrased Petitioner's claim as arising under Martinez v. Ryan, 566 U.S. 1 (2012), rather than under the independent and adequate state ground doctrine; the Magistrate Judge did not find that Respondent violated the "plain statement rule" by not clearly and expressly relying on waiver as a ground for rejecting any aspect of Petitioner's claim; and the Magistrate Judge did not address Petitioner's

assertion that the PCR judge's ruling is contrary to federal law.

The Magistrate Judge properly complied with the independent and adequate state ground doctrine by finding that Grounds Two, Three, and Four are procedurally barred from habeas review because these grounds were not raised in Petitioner's petition for writ of certiorari challenging the PCR judge's ruling. Further, Petitioner fails to show that he established cause and actual prejudice to overcome the procedural bar. Petitioner's objections are without merit.

2.    Grounds Six through Eleven. The Magistrate Judge noted that these grounds for relief were not raised to or ruled on by the PCR judge. The Magistrate Judge also noted that Petitioner argued in response to Respondent's motion for summary judgment procedural default should be excused under Martinez.

The Magistrate Judge found that Martinez did not excuse the procedural bar established for Grounds Eight and Ten because those two grounds do not allege claims of ineffective assistance of trial counsel. See Davila v. Davis, 137 S. Ct. 2058, 2062 (2017) (declining to extend Martinez's narrow exception). As to Grounds Six, Seven, Nine, and Eleven, the Magistrate Judge found that, under Martinez, PCR counsel's performance was not deficient, and Petitioner's claims are not substantial. Accordingly, the Magistrate Judge recommended that summary judgment be granted as to Grounds Six through Eleven.

With respect to Ground Six, Petitioner argues trial counsel erroneously stated during the PCR hearing that Petitioner refused every plea offer. Petitioner contends that he had a plea offer from the state of twelve to fourteen years imprisonment and that the state presented no evidence that

Petitioner actually denied or refused the state's plea of twelve to fourteen years.[7] Petitioner asserts that he solely objected to the state's offer to allow him to take an <u>Alford</u> plea. Petitioner asserts he made a substantial showing that trial counsel was deficient in how he handled the plea negotiations, and a substantial showing that Petitioner would have accepted the offer of twelve to fourteen years had he understood the consequences of not accepting the plea deal. ECF No. 35, 4.

 <u>Martinez</u> is inapplicable in this instance, however, because Petitioner raised the issue in his PCR application, ECF No. 91-1, 367, and testified to his ground for relief at the PCR hearing, <u>id</u>. at 393. The PCR judge found that Petitioner was aware he faced a sentence of life without parole. Petitioner's objection is without merit.

 Regarding Ground Seven, Petitioner asserts the Magistrate Judge erred in agreeing with Respondent that the jury could determine from the evidence the lottery ticket was not property and/or had no value and thus no actual robbery occurred. Petitioner further states that the Magistrate Judge did not address Petitioner's arguments regarding the granting of a directed verdict, and his assertion that a trial judge is not obligated to instruct on a lesser-included offense in the absence of a request or evidence presented by a defendant. <u>Id.</u> at 35, 4.

 The court's review of the record shows that, in Ground Seven of his § 2254 petition, Petitioner contends trial counsel should have objected to the trial judge's instructing the jury as to both an "indicted armed robbery and an unindicted attempted armed robbery charge[.]" ECF No. 1-2, 5. As the Magistrate Judge properly found, an indicted offense necessarily includes all lesser-included offenses, which, if supported by the evidence, may be presented to the jury. ECF No. 27,

---

[7]Petitioner, not Respondent, has the burden of proving by the preponderance of the evidence that trial counsel was ineffective for failing to refer to any other plea offers. <u>Strickland</u>, 466 U.S. at 687.

34; see State v. Smith, 750 S.E.2d 612, 614, n.6 (S.C. 2013) (citing State v. Drayton, 361 S.E.2d 329, 335 (1987)). Trial counsel was not ineffective for failing to raise this argument, and PCR counsel was not ineffective within the meaning of Martinez for failing to raise the argument. Petitioner's other arguments fail because the trial judge properly charged the jury on the lesser included offense of attempted armed robbery. Petitioner's objection is without merit.

As to Ground Eight, Petitioner asserts the Magistrate Judge misapprehended his argument by suggesting Petitioner relied on Martinez to overcome the procedural default. Petitioner argues that his procedural default is excused based on other state and federal law. Petitioner contends in Ground Eight of his § 2254 petition that appellate counsel was ineffective for failing to raise trial counsel's objections to the relevancy of the weapon found in Petitioner's hotel room.

Ineffective assistance of appellate counsel claims are cognizable on federal habeas review because an indigent person appealing, as a matter of right, from a criminal conviction is entitled to the appointment of counsel. Douglas v. California, 372 U.S. 353, 356 (1963). However, Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted because, although it was raised in Petitioner's PCR application, it was not ruled on by the PCR judge. Petitioner's objection is without merit.

Regarding Ground Nine, Petitioner contends that, contrary to the Magistrate Judge's conclusion, he asserted facts that show trial counsel did not make strategic decisions, such that this ground falls within the contemplation of Martinez. In Ground Nine, Petitioner contends trial counsel failed to object to a constructive amendment of the indictment. Petitioner argues that a direct verdict should have been granted as to the armed robbery offense and that no lottery ticket was admitted into evidence to warrant an attempted robbery offense. ECF No. 1-2, 5. As noted with respect to Ground

Seven, charging the jury with a lesser-included offense does not constitute an amendment of the indictment.  Petitioner's objection is without merit.

As to Ground Ten, Petitioner argues the Magistrate Judge erred in concluding his claim does not allege ineffective assistance of counsel, so procedural default is not excused pursuant to Martinez.  In his § 2254 petition, Petitioner raised as Ground Ten: "Brady Violation Prosecutor failed to disclose the State's fingerprint analyst was not certified by S.L.E.D."  ECF No. 1-2, 1. Petitioner further alleged the following facts in support of Ground Ten:

> Officer Christopher Adam Gray, Lt. M.A. Peterson, and Douglas Smith of the Greenville County Forensics Division of South Carolina was not certified by S.L.E.D. to conduct any forensic analysis and processing examination in accordance with South Carolina Statutory Law §23-3-15.  Both Christopher Gray and Douglas Smith testified at Petitioner's trial.  Examination, test reports, and the content based on expert testimony upon which the State replied *[sic]* upon was inadmissible. This information was prejudicial to Petitioner, because it was the starting point and foundation to the State's investigation and conviction.  Thus violating Petitioner's 6th and 14th Amendment rights.

ECF No. 1-2, 6.

The court concludes the Magistrate Judge did not err in finding Petitioner did not raise a claim of ineffective assistance of trial counsel such that Martinez would excuse procedural default. Petitioner's objection is without merit.

Finally, Petitioner objects to the Magistrate Judge's findings and conclusions as to Ground Eleven.  In his § 2254 petition, Petitioner asserts that appellate counsel was ineffective for failing to raise a meritorious issue on appeal.  In his supporting argument, Petitioner states trial counsel was ineffective for failing to object to the state's comments during closing arguments.  Petitioner contends the state argued to the jury:

> . . . I would just note for you to consider is that you got the victim out there, working

31

a second job, trying to support his family and he's just trying to use a paint brush to do that. On the other hand, you have this Defendant, Eugene Thomas, who goes out and his tool, his way of earning a living is buy *[sic]* using that gun, right there and just taking a crime – taking an opportunity to rob the victim.

ECF No. 9-1, 314. Petitioner states that, prior to his current offense, he never had been convicted of any type of robbery, burglary, or larceny offense.

Assuming Martinez applies to excuse the procedural default appertaining to Ground Eleven, Petitioner has not shown a violation of the Strickland standard. As an initial matter, the trial judge instructed the jury that the arguments of counsel were not evidence. Further, an interruption of an argument by opposing counsel is a matter to be approached cautiously. United States v. Young, 470 U.S. 1, 13 (1985). Courts have recognized a viable trial strategy can exist when a defense attorney does not want to draw attention to a statement made by the state. See Sims v. Stevenson, C/A No. 1:14-4661-JMC-SVH, 2015 WL 13732197, *10 (D.S.C. Nov. 30, 2015). The court further agrees with the Magistrate Judge that the statements themselves did not "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" ECF No. 27, 38 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). Petitioner's objection is without merit.

## IV. CONCLUSION

For all these reasons, the court concludes that the PCR judge's rulings were not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The court further finds that Petitioner's unexhausted grounds for relief do not overcome procedural default. Respondent's motion for summary judgment (ECF No. 10) is **granted**. Petitioner's § 2254 petition is denied and dismissed,

with prejudice.

## V.  CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that Petitioner has not made the requisite showing.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge


Columbia, South Carolina

September, 25 , 2020



**NOTICE OF RIGHT TO APPEAL**

**Petitioner is hereby notified of the right to appeal this order
pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**